GEORGE C. NIGHTINGALE & another, Assignees, *v.* JOHN P.
SMITH & others.

Where an assignor excluded from a preference under *his* assignment those of his creditors
who had received, or were entitled to receive, a dividend upon their claims against him
under *any other* assignment, he was held not to intend to exclude from his preference
those of his creditors by promissory note, who, by neglecting to release a prior assignor
who had indorsed his notes, were thrown into such a class under another assignment,
that, to his knowledge, when he executed his, they could not possibly receive any divi-
dend under the other.

To meet acceptances of his commission agents, advanced to him on consignments, the
assignor had purchased with his checks on banks and remitted to his agents, bankers'
drafts on short time, indorsed by him. His checks not being paid, the bankers did not
send funds to take up their drafts; so that the agents had to provide for their accept-
ances out of their own funds; and the result, at the time of the assignment, was, that
a balance of account was due from the assignor to them. The checks, drafts, and bal-
ance of account were all embraced, by description, in the first class of the assignment.
*Held,* that the commission agents should receive a dividend under the assignment upon
their balance of account, and the bankers on the amount of the checks, less the dividend
received by the commission agents.

BILL IN EQUITY by the assignees of Zachariah Allen for in-
structions in the administration of a trust for creditors, created
by a general deed of assignment.

The deed, which bore date the 30th day of September, 1858,
conveyed all the property of the assignor; and after ordering
the sale of the same and payment out of the proceeds of the
expenses of the trust, and certain debts which were to be paid
in full, appropriated the balance of the proceeds to the payment
of the debts of the assignor, which, in order of preference, were
divided into three classes, — the two first classes of which, as a
condition of preference, were to be released by their holders;
the third, and last class, consisting of debts described in the
two first classes and not released, and of debts not falling
within the descriptions of the two first classes. The instruc-
tions prayed by the bill related to the payment of a dividend to
debts falling within the first class, so called, of the assignment,
the description of which was as follows: —

" CLASS I. First to the payment in full, if sufficient, other-
wise ratably, of all sums justly due from me on my promis-
sory notes and checks on bank outstanding, signed by me or

by my authorized agent, which were originally given exclusively for my own indebtedness as principal, and not otherwise; and which (1) have not been secured in anywise by me, by any mortgage deed of real or personal estate, or by pledge of negotiable paper on which I am not personally liable; and which (2) are not new notes representing debts or obligations for which I am or was liable as indorser or surety on the paper of some other person, firm, or party; and which (3) are not new notes representing old obligations on which I am or was liable as drawer of any draft accepted by some other person, firm, or party; and which (4) are not notes entitled to, or which have received or may receive a dividend from the heretofore assigned estate of some other person, firm, or party, whether such assignment were voluntary or otherwise; nor notes which represent a previous debt that has received or is entitled to receive a dividend as aforesaid; also to the payment as above described, of all my new promissory notes made and signed by me or my authorized agent, and given in exchange for or representing my debts previously evidenced by my own notes indorsed by P. Allen & Sons, and which new notes were given by me with the intent that the original notes so indorsed, so far as they are outstanding, should be held as collateral thereto.

" Also to the payment as above described, of the amounts due from me as indorser on the unpaid drafts of any banking company, public or private, drawn to my own order, dated on or between the 5th day of August and 9th day of September, 1857.

" Also to the payment as above described, of all sums justly due or owing from me on a few balances of book accounts for mill supplies and merchandise purchased by me and delivered previously to the 11th day of September, 1857, including balances that may be found justly due to any bleaching company for bleaching goods delivered to me previously to the 11th day of September, 1857, and balances which may be found due to commission agents on final settlement of account sales, and balances of any debts secured by pledge of merchandise, the same being first applied in liquidation.

" Also to the payment as above described, of all amounts due

from me on my acceptances of drafts drawn on me. The several claims described under the different clauses of this Class I. are all to stand on the same footing, without reference to the order in which they are described."

There were three descriptions of claims falling within this class, concerning the payment of a dividend to which the bill prayed instructions. The *first,* were claims of John P. Smith & others, consisting of notes of the assignor given for his original indebtedness, and indorsed by Philip Allen & Sons. Philip Allen & Sons had made an assignment in trust for their creditors on the 27th day of November, 1857, giving preference, on condition of a release to those to whom they were the principal debtors, over those to whom they were indebted as indorsers, guarantors, or sureties, and preferring also their releasing to their non-releasing, creditors. The claimants had not released Philip Allen & Sons, and were of course thrown into the last class under *their* assignment. The debts of the releasing creditors of P. Allen & Sons amounted to about $1,180,000; whereas, their whole property, which had been sold prior to the execution by Zachariah Allen of his assignment, had realized only about $425,000. The above facts were all known to Zachariah Allen on the 30th day of September, 1858, when he executed his assignment. If these facts did not exclude the claimants from a dividend as creditors in the first class of the assignment they had entitled themselves thereto by duly releasing the assignor.

The *second* claim, concerning which the assignees desired instructions, was that of the Mechanics' & Manufacturers' Bank. The bank held a note of the assignor for $4,000, given by him for his original indebtedness, and indorsed by Philip Allen & Sons, which note not being paid at maturity, the assignor gave a new note to the bank for the same amount, and left the old one as collateral security for its payment. In executing its release to the assignor at the time limited in the assignment, the release mentioned by mistake only the first, or collateral note; but, upon afterwards receiving a partial dividend, the bank surrendered both notes, and gave a receipt and discharge of the last.

The *third* and *last* description of claims consisted of those of

Messrs. Wood & Erringer, of Philadelphia, commission agents of the assignor, to whom he was indebted in a balance of account, and those of Messrs. Daniel W. Vaughn & Co., brokers and bankers, of Providence, now assigned to Walter S. Burges, Esq., and which consisted of the assignor's unpaid checks drawn upon banks in Providence, in their favor. To meet certain renewed acceptances of Messrs. Wood & Erringer, which they had advanced to the assignor upon consignments, he purchased of D. W. Vaughn & Co., their drafts upon New York, with his own checks upon banks in Providence; and, having indorsed the drafts so purchased, remitted them to Messrs. Wood & Erringer. The banks refusing to pay all the assignor's checks, D. W. Vaughn & Co. only partially remitted funds to New York to meet their drafts, and, in consequence, Messrs. Wood & Erringer were obliged, in great part, to take up their acceptances with other funds, — leaving them an unpaid balance of account against the assignor, for which they held the drafts of D. W. Vaughn & Co.; Vaughn & Co. holding the unpaid checks of the assignor which they subsequently assigned to Burges. In this condition of things the present assignment was made; and both Wood & Erringer and D. W. Vaughn & Co., having duly released the assignor, claimed to prove their claims for a dividend under the first class in the assignment. The instructions desired by the assignees related to these claims, and what amount of claims these claimants were respectively entitled to prove for such dividend.

*Bradley,* for the assignees.

*Payne,* for John P. Smith & others.

*Hayes,* for Wood & Erringer.

*Burges, pro seipso.*

AMES, C. J. The claims of John P. Smith & others are embraced in the general description of claims preferred in the first class of this assignment; and the first question put to us by the assignees in their bill for instructions is, whether these debts are excluded from this preference by the fourth exception to the claims thus described, upon the ground, that by virtue of them, the claimants were entitled to a dividend under the assignment of Philip Allen & Sons.

Nothing is better settled at this day than that, to understand what the maker of an instrument intends by his description of the subjects or objects of his conveyance, the court is entitled to know precisely what he knew with regard to them, so that it may occupy his position in construing his language. Now the facts stated in the bill show, that although these claims were embraced in the prior assignment of Philip Allen & Sons, yet, when *this* assignment was made, their condition was unalterably fixed in such a class under *that* assignment, that it was reduced to an absolute certainty that they could receive no dividend under it. The assigned property of Philip Allen & Sons had all been sold ; its proceeds precisely ascertained; and the result was, that there remained only $425,000, to be apportioned amongst debts of the first class, amounting to $1,180,000. As the claimants had not released Philip Allen & Sons, and the time for release had elapsed, they were postponed in payment to this vast mass of debt, and, as the bill states, their condition in this respect was well known to Zachariah Allen when he used in *his* assignment the above words of exception.

With these facts before him, we are all satisfied that it was not his intent to exclude the present claimants from the first class in his assignment by his fourth exception in the clause descriptive of that class. The claimants could not have been in his view *entitled* to a dividend under the assignment of Philip Allen & Sons, when he knew that under the circumstances it was absolutely impossible that there ever could be a dividend for them to receive. A title to that, which to his knowledge could have no existence, can hardly have been intended by him to exclude from his preference those whose claims, in his view, otherwise entitled them to it. His substantial meaning in this exception plainly was, that those should not be included in the first class of *his* assignment, who had received or might receive, and not might *have* received, a dividend under *any other*. His assignment speaks from the day of its date ; and whatever might have once been the position of these claimants under the assignment of Philip Allen & Sons, must be construed to regard them, in the position in which they

then stood, as wholly excluded from the chance of dividend under that assignment.

The criticism, that the specification, as preferred, of certain new notes of the assignor given for debts previously evidenced by his notes indorsed by Philip Allen & Sons, which follows the fourth exception, upon this construction of the exception, is not warranted by the context. The notes before mentioned as preferred, and to which all the exceptions apply, were notes " originally given exclusively " for the assignor's " own indebtedness as principal, and not otherwise ; " whereas these new notes were preferred without reference to the origin of the debts which they represent.

Our instruction to the assignees, therefore, must be to pay the claims in question *pari passu* with the other claims in the first class of the assignment, as not within the fourth exception to the claims first mentioned therein as preferred.

In this view of the fourth exception, the question with regard to the claim of the Mechanics' & Manufacturers' Bank ceases to be of any importance. The amount of their old note, which, under the above construction of the exception, is entitled to dividend in the first class of the assignment, was precisely equal to that of their new one; and whichever was technically released, their right of dividend remains the same. It becomes unnecessary, therefore, to decide, whether the mistake in their release, coupled with the fact that they have surrendered, and the assignees have accepted the surrender of both notes, is not tantamount, in equity, to a technical release of both.

The claim of Wood & Erringer, which is for a final balance of their account with the assignor as his commission agents, and of D. W. Vaughn & Co., on unpaid checks on banks, signed by the assignor, are both embraced in the first class, so called, of the assignment. Wood & Erringer have received, however, from the assignor, in payment of their balance, certain drafts of D. W. Vaughn & Co., which the assignor purchased of the latter firm with his unpaid checks on bank now held by them, or by their assignee Burges. So far as the drafts of D. W. Vaughn & Co. remitted to Wood & Erringer have been paid, they sink the balance of their account against the as-

signor; leaving them for the remainder of their balance the double security of the assignor's liability, and the drafts of D. W. Vaughn & Co. Upon this remainder of their balance only, are Wood & Erringer entitled to a dividend; and as the receipt of this dividend from the estate of the assignor, will, so far, go to decrease the liability of D. W. Vaughn & Co. upon their drafts to Wood & Erringer, D. W. Vaughn & Co. should be allowed to prove only for the balance of their checks, after deducting the dividend received by Wood & Erringer.